## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | Chapter 7 |
| Roger Jon Dvorak, Jr. and<br>Nancy Jean Dvorak, | Bankruptcy No. 19-33372 |
| Debtors. | |

| | |
|---|---|
| James L. Snyder, United States Trustee, | |
| Plaintiff, | Adv. No. _____ |
| | **COMPLAINT FOR<br>DENIAL OF DISCHARGE** |
| Roger Jon Dvorak, Jr. and<br>Nancy Jean Dvorak, | |
| Defendants. | |

Plaintiff, James L. Snyder, Acting United States Trustee, for his complaint against Roger Jon Dvorak, Jr. and Nancy Jean Dvorak, the defendants, states and alleges as follows:

1. James L. Snyder is the Acting United States Trustee for Region 12, which covers the Federal Judicial Districts of Iowa (Northern & Southern Districts), Minnesota, North Dakota, and South Dakota. The United States Trustee has standing to commence this adversary proceeding pursuant to 28 U.S.C. § 586(a) and 11 U.S.C. § 727(c)(1).

2. The Dvoraks are residents of the State of Minnesota. The Dvoraks filed a voluntary joint petition for relief under chapter 13 of the Bankruptcy Code on October 28, 2019. The Dvoraks converted their case to chapter 7 on January 30, 2020. The chapter 7 case is captioned *Roger Jon Dvorak, Jr. and Nancy Jean Dvorak*, case number 19-33372, Bankr. D. Minn., Third Division, and it remains open. Patti J. Sullivan was appointed as the chapter 7 trustee.

3.  This complaint is filed under Fed. R. Bankr. P. 7001(4) and seeks an order denying the Dvoraks' discharge in this case pursuant to 11 U.S.C. § 727(a)(2)(B) and (a)(4)(A).

4.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding.

5.  The United States Trustee consents to entry of final judgment by the bankruptcy court in this matter.

## Background

6.  On information and belief, the Dvoraks owned and operated a Minnesota entity called Curb to Curb, Inc. ("Curb to Curb"). Curb to Curb provided parking lot sweeping and snow removal services. Curb to Curb also employed Mrs. Dvorak.

7.  Lakeview Bank made approximately five loans to Curb to Curb in 2016. Curb to Curb granted a security interest in various items of collateral to Lakeview Bank. The Dvoraks personally guaranteed the loans, and they granted mortgages on their homestead to Lakeview Bank as additional collateral to secure the loans.

8.  Curb to Curb defaulted on its obligations to Lakeview Bank. On November 1, 2018, Lakeview Bank entered into a forbearance agreement with Curb to Curb. The Dvoraks executed new personal guarantees and granted new mortgages to Lakeview Bank.

9.  On or about May 24, 2019, Mr. Dvorak signed a purchase agreement with Leroy and Connie Chard for the purchase of a farm in New Ulm, Minnesota ("New Ulm Real Estate") on a contract for deed. Kubes Realty represented the Chards in the transaction.

10. On or about June 4, 2019, Mr. Dvorak obtained a $10,000 cashier's check payable to Kubes Realty. The cashier's check represented earnest money payable to the Chards.

11. On or about July 1, 2019, Mr. Dvorak incorporated a new Minnesota entity called Curb 2 Curb, Inc. ("Curb 2 Curb"). Curb 2 Curb took possession of the New Ulm Real Estate the same day. The Dvoraks did not dissolve Curb to Curb. They continued to collect accounts receivable owing to Curb to Curb and deposited the receivables into Curb 2 Curb's bank account. Curb 2 Curb deposited checks made payable to Curb to Curb as recently as November of 2020. The Dvoraks did not inform Lakeview Bank of their activities.

12. On or about July 24, 2019, Mr. Dvorak closed on the contract for deed for the New Ulm Real Estate. The contract for deed indicates that Mr. Dvorak paid $40,000 to the Chards. The Dvoraks, however, claim that no additional funds changed hands at the closing.

13. Mr. Dvorak's close personal friend, Robert Annen, owns A&M Electric. Mr. Annen entered into a verbal lease with Mr. Dvorak and moved into the New Ulm Real Estate shortly after Curb 2 Curb took possession of the property. Mr. Annen used A&M's bank accounts to make monthly rent payments of $1,500 to either Curb to Curb or Mr. Dvorak, beginning in July of 2019. For example, A&M Electric paid $3,750 to Curb to Curb on or about July 26, 2019, and $1,500 per month to Mr. Dvorak each month from September 2019 through December 2019.

14. On information and belief, Mr. Annen continued to reside at the New Ulm Real Estate throughout 2020 and continued using A&M Electric's bank accounts to make monthly rent payments of $1,500 to either Curb to Curb or Mr. Dvorak.

15. On information and belief, Mr. Annen continues to reside at the New Ulm Real Estate and continues using A&M Electric's bank account to make monthly rent payments of $1,500 to either Curb to Curb or Mr. Dvorak.

16. On or about August 2, 2019, Mr. Dvorak borrowed $7,000 from his brother to pay the

Chards.  Mr. Dvorak's brother owns JD's Auto Service, Inc.   JD's Auto Service issued a $7,000 check to Mr. Dvorak, who cashed the check and converted it to a cashier's check at Round Bank.

17.    On or about August 5, 2019, Curb 2 Curb wrote a $7,000 check to JD's Auto Service.

18.    On or about August 8, 2019, Mr. Dvorak paid $10,000 to the Chards.

19.    On or about August 15, 2019, Mr. Dvorak borrowed $16,333.13 from A&M Electric to pay the Chards.

20.    On or about August 22, 2019, Curb 2 Curb wrote checks totaling $16,333.13 to A&M Electric.

21.    The contract for deed was recorded on August 23, 2019.

## Transfers to and from Curb to Curb and A&M Electric

22.    Mr. Dvorak frequently used Curb to Curb to pay the Dvoraks' personal expenses, such as the mortgage attached to their homestead.

23.    Between October 28, 2018 and October 27, 2019, Mr. Dvorak transferred $86,505 from his Wells Fargo personal bank account to Curb to Curb.

24.    Beginning in 2013, Mr. Annen and A&M Electric and Mr. Dvorak and Curb to Curb made periodic loans and loan repayments to one another.   The loans totaled hundreds of thousands of dollars.   Between July 12, 2019 and August 7, 2019, Curb 2 Curb transferred $15,000 to A&M Electric to repay funds borrowed by Curb to Curb.

## Fraudulent Bankruptcy Filing

25.    The Dvoraks filed a voluntary chapter 13 bankruptcy petition on October 28, 2019.

26.    On information and belief, as of October 28, 2019, the Dvoraks were in possession of 15

checks totaling over $11,000.  The checks were payable to Mr. Dvorak or Mrs. Dvorak and written on Curb 2 Curb's bank account.

27. On information and belief, as of October 28, 2019, Curb 2 Curb held at least $40,000 in accounts receivable and no debt.

28. The same day, the Dvoraks executed an assignment of their interest in the contract for deed for the purchase of the New Ulm Real Estate.  The Dvoraks assigned their interest to Curb 2 Curb, and they did not receive any consideration for the transfer.

29. On November 13, 2019, the Dvoraks filed their bankruptcy schedules and statement of financial affairs.  On schedule A/B, the Dvoraks did not list any accounts receivable or unpaid wages.  On schedule A/B, the Dvoraks claimed that the value of their interest in Curb 2 Curb was only $15,000.  The Dvoraks failed to disclose on schedule I/J that Mr. Annen was paying rent.  They also failed to disclose the rental agreement with Mr. Annen on schedule G.  On the statement of financial affairs, the Dvoraks failed to disclose the receipt of rents from Mr. Annen.  They also failed to disclose: (1) the assignment of their interest in the contract for deed to Curb 2 Curb; (2) any of the transfers to Curb to Curb in the year prior to their bankruptcy petition; (3) any of the loan payments from Curb to Curb to A&M Electric.

30. On November 15, 2019, the Dvoraks recorded the transfer of their interest in the contract for deed to Curb 2 Curb at the Office of the Scott County Recorder.

### False Oaths at Meeting of Creditors

31. Counsel for the chapter 13 trustee, Jeffrey M. Bruzek, convened the meeting of creditors in the chapter 13 case on December 11, 2019.  At the meeting of creditors in the chapter 13 case, Mr. Dvorak testified falsely as follows:

    a.    That he used receivables of Curb 2 Curb to make the $40,000 down payment on the contract for deed.

    b.    That Curb 2 Curb did not take over any of the accounts of Curb to Curb.

    c.    That Curb to Curb stopped doing business at the beginning of July 2019.

The Dvoraks also falsely testified that there were no errors or omissions on their bankruptcy schedules. The Dvoraks failed to disclose the assignment of the interest in the contract for deed to Curb 2 Curb or the post-petition recording of the transfer. The Dvoraks did not disclose any of the rent that they were collecting from Mr. Annen.

32.    On January 30, 2020, the Dvoraks converted their case to chapter 7.

33.    On February 24, 2020, Ms. Sullivan convened the meeting of creditors in the chapter 7 case. At the meeting of creditors in the chapter 7 case, the Dvoraks testified falsely as follows:

    a.    That the information on their bankruptcy documents was true and correct.

    b.    That they had not made any payments to unsecured creditors in excess of $6,000 in the three months prior to their bankruptcy petition.

Mr. Dvorak testified falsely as follows:

    a.    That Curb 2 Curb made the down payment for the purchase of the New Ulm Real Estate.

    b.    That Robert Annen was not paying rent.

    c.    That Robert Annen had resided at the New Ulm Real Estate for less than 30 days.

34.    On March 31, 2020, Ms. Sullivan reconvened the meeting of creditors in the chapter 7 case. At the reconvened meeting of creditors in the chapter 7 case, Mr. Dvorak testified falsely as follows:

6

      a.      That Curb 2 Curb did not have any of the same customers as Curb to Curb, with the exception of US Bank.

      b.      That he was only renting out the New Ulm Real Estate to Robert Annen until the end of the month.

      c.      That Mr. Annen was only paying $500 a month in rent.

      d.      That Curb 2 Curb paid the initial $10,000 earnest money to the Chards.

## COUNT I
### CONCEALMENT OF PROPERTY OF THE ESTATE WITH INTENT TO HINDER, DELAY, OR DEFRAUD THE CHAPTER 7 TRUSTEE AFTER THE DATE OF THE FILING OF THE PETITION

35.      The plaintiff re-alleges Paragraphs 1-34 as if fully set forth herein.

36.      The Dvoraks filed a voluntary chapter 13 petition on October 28, 2019.

37.      Curb to Curb, Inc. and Curb 2 Curb, Inc. serve as alter egos of the Dvoraks.

38.      The Dvoraks concealed rents with the intent to hinder, delay, or defraud the chapter 7 trustee or the chapter 13 trustee after the date of the filing of their bankruptcy petition.

39.      The concealed rents were property of the bankruptcy estate.

40.      The Dvoraks concealed the transfer of their interest in the New Ulm Real Estate with the intent to hinder, delay, or defraud the chapter 7 trustee or the chapter 13 trustee after the date of the filing of their bankruptcy petition.

41.      The Dvoraks' interest in the New Ulm Real Estate was property of the bankruptcy estate.

42.      The Dvoraks concealed 15 checks totaling over $11,000 with the intent to hinder, delay, or defraud the chapter 7 trustee or the chapter 13 trustee after the date of the filing of their bankruptcy petition.

43.      The checks were property of the bankruptcy estate.

44. As a result of the Dvoraks' conduct, the plaintiff is entitled to an order denying the Dvoraks' discharge under 11 U.S.C. § 727(a)(2)(B).

## COUNT II
## FALSE OATHS IN OR IN CONNECTION WITH THE CASE

45. The plaintiff re-alleges Paragraphs 1-44 as if fully set forth herein.

46. The Dvoraks filed a voluntary chapter 13 bankruptcy petition on October 28, 2019.

47. The Dvoraks knowingly and fraudulently made the following false oaths:

   a. On schedule A/B, the Dvoraks claimed that the value of their interest in Curb 2 Curb was only $15,000.

   b. The Dvoraks failed to disclose on schedule I/J that Mr. Annen was paying rent.

   c. The Dvoraks failed to disclose the rental agreement with Mr. Annen on schedule G.

   d. On the statement of financial affairs, the Dvoraks failed to disclose the receipt of rents from Mr. Annen.

   e. On the statement of financial affairs, the Dvoraks failed to disclose the assignment of their interest in the New Ulm Real Estate to Curb 2 Curb.

   f. On the statement of financial affairs, the Dvoraks failed to disclose transfers of funds to Robert Annen or A&M Electric.

   g. On the statement of financial affairs, the Dvoraks failed to disclose payments to JD's Auto Service, Inc.

   h. On the statement of financial affairs, the Dvoraks failed to disclose loan payments made by Curb to Curb to A&M Electric in the year prior to their bankruptcy filing.

   i. On the statement of financial affairs, the Dvoraks failed to disclose the transfer of

8

$86,505 from Mr. Dvorak's Wells Fargo personal bank account to Curb to Curb.

48. The Dvoraks' false oaths set forth above were material omissions regarding property of the estate.

49. As a result of the Dvoraks' false oaths, the plaintiff is entitled to an order denying the Dvoraks' discharge under 11 U.S.C. § 727(a)(4)(A).

WHEREFORE, the plaintiff requests that this Court enter an order and judgment denying the Dvoraks' discharge under 11 U.S.C. § 727(a)(2)(B), and (a)(4)(A), together with such other and further relief as the Court deems just and equitable.

Dated: February 22, 2021

JAMES L. SNYDER
ACTING UNITED STATES TRUSTEE
REGION 12

BY: /e/ Colin Kreuziger
Colin Kreuziger, MN Attorney No. 0386834
Trial Attorney
United States Department of Justice
1015 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 334-1350
Colin.Kreuziger@usdoj.gov

**VERIFICATION**

I, Colin Kreuziger, a trial attorney for the United States Trustee, the Plaintiff herein, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Executed on: February 22, 2021        /e/ Colin Kreuziger
Colin Kreuziger, MN Attorney No. 0386834
Trial Attorney
United States Department of Justice
1015 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 334-1350
Colin.Kreuziger@usdoj.gov